IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

**JOHN R.**[1]

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,**

        Defendant.

Civ. No. 3:24-cv-01985-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff John R. seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits. Full consent to magistrate judge jurisdiction was entered on November 27, 2024 (ECF No. 4). For the reasons provided below, the Commissioner's decision is REVERSED and REMANDED.

## BACKGROUND

On August 22, 2022, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on June 1, 2022, when he was 37 years old. Tr. 195. The claims were denied initially and on reconsideration. Tr. 69-78, 79-88. Plaintiff requested a hearing before an administrative law judge ("ALJ") and appeared before ALJ Linda Thomasson on March 25, 2024. Tr. 141-43, 36-68. Plaintiff, represented by his attorney, and a vocational expert testified at the hearing. Tr. 36-68. The ALJ found Plaintiff not disabled in a written decision issued May 29, 2024. Tr. 17-30. The Appeals Council denied review on October 16, 2024,

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

making the ALJ's decision the final agency decision. Tr. 1-6. Plaintiff now requests the United States District Court review the ALJ's decision and alleges harmful legal error. Pl. Br., ECF No. 9 at 1-15.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then

the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

3 - Opinion and Order

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. The claimant had not engaged in substantial gainful activity since June 1, 2022, the alleged onset date. Tr. 19.

2. Plaintiff had the following severe impairments: heart failure, hypertension, left elbow disorder. Tr. 20.

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 21.

4. Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can stand and walk a total of 2 hours combined in a 8-hour workday; can sit without limitation; can never climb ladders, ropes, and scaffolds; can perform all other postural activities occasionally; can frequently reach with the left arm; can tolerate occasional exposure to temperature extremes, humidity, and pulmonary irritants; and should have no exposure to hazards such as moving mechanical parts or unprotected heights. Tr. 23.

5. Plaintiff was unable to perform any past relevant work. Tr. 28.

6. Plaintiff was born on August 1, 1984 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Tr. 29.

7. Considering the Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed, such as Small Products Assembler (DOT 739.687-030, light, SVP 2, 29,700 jobs nationally); Wire Worker (DOT 728.684-022, light, SVP 2, 19,400 jobs nationally; and Electrical Accessories Assembler (DOT 729.687-010, light, SVP 2, 8,277 jobs nationally). Tr. 29-30.

8. Plaintiff was not under a disability, as defined in the Social Security Act, at any time from June 1, 2022, the alleged onset date, through May 29, 2024, the date of decision. Tr. 30.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden

Case 3:24-cv-01985-CL   Document 13   Filed 11/13/25   Page 6 of 18

of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) failing to give clear and convincing reasons to discount his subjective symptom testimony and (2) improperly rejecting Katy Bochat, D.O.'s medical opinion. Plaintiff also raises issues of the ALJ erring in finding Plaintiff's mental impairments nonsevere and not supporting with substantial evidence her Step-Five finding. However, because the first two issues are dispositive and plaintiff is entitled to remand with benefits on those issues, this court declines to walk through every other assignment of error.

For the following reasons, the Court holds the ALJ erred in evaluating Plaintiff's subjective symptom testimony and Dr. Bochat's opinion regarding Plaintiff's impairments. The decision of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and payment of benefits.

### I. Subjective Symptom Testimony

Determining the credibility of a claimant's symptom testimony requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 404.1529. At the first step, the claimant must produce objective medical evidence of

6 - Opinion and Order

an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second step, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014); *Trevizo*, 871 F.3d at 678-79. The "clear and convincing" standard requires an ALJ to "show [their] work" but, ultimately, the question is not whether ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Plaintiff argues the ALJ failed to give specific, clear and convincing reasons for disregarding his subjective symptom testimony. Plaintiff argues the ALJ failed to properly support her finding that Plaintiff's statements were inconsistent with the record, and the ALJ improperly singled out temporary instances of well-being without considering context in an attempt to discredit plaintiff. (Pl. Br. at 10-12.) Plaintiff is correct.

*A. Objective Medical Evidence*

The ALJ improperly discounted Plaintiff's testimony about the limiting effects of his health impairments. The ALJ summarized various parts of the medical record attempting to show inconsistency between the record and Plaintiff's testimony regarding his shortness of breath, exercise capacity, and other symptoms of Plaintiff's heart condition. (Tr. 24-25.) Although an ALJ may use "inconsistent objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom

7 - Opinion and Order

testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (simplified); *see Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) ("An ALJ, however, may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged."). Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons that explain why the medical evidence is inconsistent with the claimant's subjective symptom testimony. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-38, 1040 (9th Cir. 2007).

Here, the ALJ failed to do so. Plaintiff testified that due to his heart failure he experienced chest pain, blurred vision, dizziness, and had a fibrillation incident "while just sitting working at the desk" at his current part-time work. Tr. 53. He testified his symptoms came at "random times." Tr. 49. He needed to take extra breaks at work to "take time to go sit and my desk and you know, relax and catch my breath" before his symptoms worsened. Tr. 43, 44. Plaintiff testified some days were better than others, but that he usually took at least two or three of those extra breaks on an average workday and would have a fibrillation event or near fibrillation event at work once or twice a week, despite only working three days a week. Tr. 44. Plaintiff stated his breaks could last from a few minutes to twenty minutes, and some days he had to leave early from work and take the day off due to his symptoms because "if you have an incident at work it's quite the ordeal."[2] Tr. 44-45.

---

[2] Plaintiff testified that while working elsewhere in the past, he twice had to be physically taken by ambulance from the job site when his fibrillation did not stabilize and was once medivacked for the same reason while working in Alaska. Tr. 50.

8 - Opinion and Order

The ALJ discounted Plaintiff's testimony because it was "not entirely consistent with the medical evidence and over evidence in the record."[3] Tr. 24. The ALJ primarily highlighted Plaintiff's normal physical status exams as medical evidence inconsistent with Plaintiff's testimony. Tr. 24-25. The ALJ noted that on examination Plaintiff had normal gait and coordination, normal respiration and pulmonary effort, no edema, and that Plaintiff was consistently alert and oriented. Tr. 24-25 (citing Tr. 432, 776, 889, 401, 405, 408, 427, 432, 445, 453, 459, 473, 480, 484, 490, 775, 778, 815, 822, 883, 889, 891, 929, 935, 1089, 1252, 1306, 1315, 1404, 453, 459, 463, 466, 468, 470, 478, 484, 486, 489, 492, 1247, 1312, 419, 453, 473, 480, 484, 781, 822, 894, 935, 1175, 1252, 1306, 1450). Those findings are not inconsistent with Plaintiff's testimony he needed to take extra breaks at work to "take time to go sit and my desk and you know, relax and catch my breath" due to his heart failure. Tr. 43. Plaintiff testified: "if I'm getting light headedness or starting to feel like I might go into A-fib[4] or having issues like that, I'll usually find somewhere where I can go sit down," and that he had to remove himself from any stressful situation before "things get worse and it becomes a snowballing problem." Tr. 44. There is no contradiction between Plaintiff's testimony of unpredictable symptoms and normal status examinations at medical appointments. There are no inconsistencies between Plaintiff's testimony and the medical records the ALJ cited because normal status exams do not contradict Plaintiff's claims of unpredictable symptoms due to heart failure.

---

[3] While the ALJ did not address it, Plaintiff correctly noted his current employer completed a work activity questionnaire consistent with Plaintiff's symptom testimony. Tr. 381 (noting Plaintiff received special assistance on the job such as: fewer or easier duties, less hours, irregular hours, special equipment, more breaks and rest periods, extra help and supervision, and frequent absences; Plaintiff did not complete all the usual duties required for his position, required special assistance to complete his job duties, and had about 60% of other employees' productivity comparatively.) Lay witness testimony as to a claimant's symptoms is "competent" testimony that an ALJ must consider. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993); *see* 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1).
[4] "Atrial fibrillation (AFib) is an irregular and often very rapid heart rhythm. An irregular heart rhythm is called an arrhythmia. AFib can lead to blood clots in the heart. The condition also increases the risk of stroke, heart failure and other heart-related complications." Atrial fibrillation, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/atrial-fibrillation/symptoms-causes/syc-20350624 (last visited Nov. 4, 2025).

9 - Opinion and Order

Furthermore, the ALJ improperly "cherry picked" the normal status exam findings because she focused on evidence supporting her conclusion even when contrary evidence appeared in the same treatment notes. Tr. 24-25. An ALJ may not "cherry pick" evidence without considering its context in the record. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (holding ALJ may not "cherry pick" evidence that disfavors disability without considering its context in record); *Garrison*, 759 F.3d at 1017 n.23 (holding ALJ may not "cherry-pick" from mixed results to support a denial).

Here, the ALJ found Plaintiff's "respiration was normal, with no wheezing and normal pulmonary effort" while citing multiple physical status exams of Plaintiff. Tr. 24-25 (citing Tr. 401, 405, 408, 427, 432, 445, 453, 459, 473, 480, 484, 490, 775, 778, 815, 822, 883, 889, 891, 929, 935, 1089, 1252, 1306, 1315, 1404). Although those status exams reported Plaintiff's pulmonary exam as normal, several are from appointments documenting Plaintiff's difficulty breathing. *Id.* One such appointment cited by the ALJ from May 17, 2022, included "normal respiratory effort" in the status exam, but also noted at the same exam it was "quite difficult [for Plaintiff] to walk long distances" and "[h]e has to ambulate with a cane due to shortness of breath as well as dizziness due to underlying progressing heart failure." Tr. 24 (citing Tr. 427). The ALJ cited a July 5th, 2022, appointment Plaintiff had with a cardiologist to support her finding of normal breathing because it noted Plaintiff had a normal respiratory effort in the status exam. Tr. 25 (citing Tr. 473). At the same appointment however, the cardiologist noted: "He continues to have decline in functional capacity. He cannot even complete activities of daily living, he cannot shop for groceries without taking several breaks." Tr. 25 (citing Tr. 473). A questionnaire from the same appointment diagnosing Plaintiff's heart failure noted Plaintiff's shortness of breath limited his ability to do what he wanted "[a]ll of the time" and Plaintiff slept

10 - Opinion and Order

sitting up in a chair propped up with pillows once or twice a week due to shortness of breath. Tr. 473.

Similarly, the ALJ cited an August 2, 2022, appointment to support her assertion Plaintiff had normal respiration, likely referring to Plaintiff's 99% oxygen saturation while at rest. Tr. 25 (citing Tr. 459). However, the record stated Plaintiff's oxygen saturation decreased to 88% at maximum exercise, Plaintiff had an "abnormal" ventilatory efficiency slope "suggesting reduced ventilatory efficiency," and "[c]hronotropic incompetence and mild oxygen desaturation" with exercise. Tr. 25 (citing Tr. 459-60)[5]. The ALJ also cited an August 18th, 2022, appointment where Plaintiff's status exam reported normal respiratory effort, but elsewhere notes from the same appointment recorded Plaintiff's symptoms as progressively worsening and that Plaintiff experienced heavy breathing from walking with a friend and needed to take several stops to rest while his friend was fine. Tr. 24 (citing Tr. 453).

In addition to Plaintiff's normal exams, the ALJ discounted Plaintiff's testimony due to "his generally intact exercise capacity" and because Plaintiff used a cane even though no cane prescription was in the record. Tr. 25. Like the ALJ's findings discussed above, those were not clear and convincing reasons supported by substantial evidence to discount Plaintiff's testimony. First, Plaintiff's "generally intact exercise capacity" was not found in the record. Tr. 25. To the contrary, the record the ALJ cited as evidence of Plaintiff's "generally intact exercise capacity"

---

[5] "Ventilatory inefficiency, defined as high minute ventilation (V′E) relative to carbon dioxide output (V′CO2), is a hallmark characteristic of pulmonary vascular diseases, which contributes to exercise intolerance and disability in these patients. The mechanisms of ventilatory inefficiency are multiple and include high physiologic dead space, abnormal chemosensitivity and an altered carbon dioxide (CO2) setpoint." Jason Weatherald, Brianne Philipenko, et. al., *Ventilatory efficiency in pulmonary vascular diseases*, European Respiratory Review, 30(161): 200214 (2021); "Chronotropic incompetence (CI), broadly defined as the inability of the heart to increase its rate commensurate with increased activity or demand, is common in patients with cardiovascular disease, produces exercise intolerance that impairs quality of life, and is an independent predictor of major adverse cardiovascular events and overall mortality." Peter H. Brubaker, Dalane W. Kitzman, *Chronotropic Incompetence: Causes, Consequences, and Management*, Circulation Volume 123, Issue 9, (2011).

11 - Opinion and Order

opined Plaintiff's overall exercise tolerance was "mildly impaired," and Plaintiff exhibited "[c]hronotroic incompetence and mild oxygen desaturation" with exercise. Tr. 25 (citing Tr. 454).

Second, using a cane without a prescription is not in itself a reason to discount Plaintiff's testimony. Neither of the two cases Commissioner cites support the position cane usage without a prescription is a reason to discount a Plaintiff's testimony. In the first case, *Tommasetti v. Astrue*, the use of a cane was only tangentially relevant to that ALJ's finding the claimant "was a 'vague witness' with respect to the alleged period of disability and pain symptoms." *Tommasetti*, 533 F.3d at 1040. In that case, it was not the unprescribed use of the cane, but the claimant's inability to recall whether the cane was prescribed that the ALJ found relevant to finding that claimant was a "vague witness." *Id.* In that case, the ALJ's finding the claimant was a vague witness was one of five reasons the ALJ gave to discount that claimant's testimony. *Id.* In the second case the Commissioner cited, *Chaudhry v. Astrue*, the claimant was found to be incredible, in part, because he used a cane against his medical provider's advice and used a wheelchair without a recommendation from any medical source. *Chaudhry v. Astrue*, 688 F.3d 661, 665, 667 (9th Cir. 2012).

The ALJ next argued Plaintiff's use of a cane was "not consistent with the claimant's normal gait and coordination, normal respiration, and generally intact exercise capacity." Tr. 25 (citations omitted). As explained above however, Plaintiff's normal status examinations were not inconsistent with Plaintiff's testimony he needed a cane for when he felt dizzy or weak due to shortness of breath caused by his heart failure. Tr. 49-50. And, while not prescribed, Plaintiff's primary care physician noted on May 17, 2022, that Plaintiff "has to ambulate with a cane due to shortness of breath as well as dizziness due to underlying progressing heart failure." Tr. 770.

Overall, the ALJ's analysis of plaintiff's subjective symptom testimony was cherry picked, mischaracterized, and unsupported by the record. Tr. 24-25. Therefore, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for discounting plaintiff's symptom testimony.

## II.    Medical Opinion

Under prior Social Security regulations, a hierarchy of medical opinions dictated the weight that must be given by an ALJ: treating doctors were generally given the most weight and non-examining doctors were generally given the least weight. *See* 20 C.F.R. §§ 404.1527, 416.927 (1991); 56 Fed. Reg. 36,932 (Aug. 1, 1991). For applications filed on or after March 27, 2017, the new regulations eliminate the old hierarchy of medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Plaintiff filed an application for disability insurance benefits on March 2, 2018. Thus, the Commissioner's new regulations apply to the ALJ's assessment of this opinion. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (correcting technical errors).

The new rules no longer provide for any inherent weight: "We [the SSA] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The SSA "considers" various medical opinions for claims filed on or after March 27, 2017, and determines which medical opinions are most persuasive. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating which opinions are most persuasive, the ALJ considers several factors. The two most important factors are supportability and consistency. *Id.* Secondary factors include the relationship with the claimant, specialization, and other factors. *Id.* at 404.1520c(c), 416.920c(c).

13 - Opinion and Order

### A. Katy Bochat, D.O.

Plaintiff's primary care physician, Dr. Katy Bochat, D.O., completed a medical source statement overviewing Plaintiff's conditions, symptoms, and level of impairment. Tr. 1294-98. Dr. Bochat opined Plaintiff's ability to lift and carry was impaired and he could lift and carry, both occasionally and frequently, a maximum weight of under ten pounds due to his shortness of breath with minimal exertion, chest pain, and pressure. Tr. 1294. Dr. Bochat opined Plaintiff's ability to stand and walk was impaired because Plaintiff had shortness of breath with minimal exertion and could stand and walk for less than two hours in an eight-hour workday. Tr. 1294. Dr. Bochat opined Plaintiff needed the option to periodically alternate at will between sitting, standing, or walking to relieve discomfort due to his neck and shoulder pain caused by muscular damage following heart surgery. Tr. 1295. Dr. Bochat opined Plaintiff would need to lie down at work once a day. Tr. 1295. Dr. Bochat opined Plaintiff's impairments or treatment for his conditions would cause him to miss work over three time a month. Tr. 1297. Dr. Bochat also opined Plaintiff had several postural, physical, and environmental restrictions. Tr. 1296. Dr. Bochat explained Plaintiff's limitations were due to his "congenital heart defect (transposition of great arteries) resulting in progressive/worsening heart failure. This causes significant shortness of breath (SOB) and dizziness with minimal exertion." Tr. 1297.

The ALJ found Dr. Bochat's opinion not persuasive because "[i]t is conclusory and not well supported by treatment notes or statements in the opinion itself" and "inconsistent with the complete medical record." Tr. 28. The ALJ failed to support their assessment of Dr. Bochat's opinion with substantial evidence. While Dr. Bochat's opinion was conclusory, that alone is not a valid reason to reject the opinion. *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). This is

especially true where, as here, the doctor completing the form has a long-standing relationship with the Plaintiff documented in treatment notes. *Garrison*, 759 F.3d at 1013.

Dr. Bochat's opinion was supported by her treatment notes of Plaintiff. At a May 17, 2022 appointment, Dr. Bochat summarized Plaintiff's heart failure as "Progressive; worsening" and noted Plaintiff's difficulty walking long distances and need for a cane "due to shortness of breath as well as dizziness due to underlying progressing heart failure." Tr. 426-27. More recently at an appointment on July 24, 2023, Dr. Bochat again categorized Plaintiff's heart failure as "Progressive; worsening" and opined he had "significant difficulty with prolonged sitting or standing largely due to underlying congenital heart defect. States this results in significant shortness of breath, chest pressure, and dizziness." Tr. 1364-65. The ALJ found Dr. Bochat's opinion not supported by her treatment notes of Plaintiff without explaining what in Dr. Bochat's opinion was unsupported or what treatment notes led to her finding. Tr. 28.

The ALJ found Dr. Bochat's opinion not well supported by a statement in the opinion itself because Dr. Bochat indicated Plaintiff experienced the opined limitations since the placement of his pacemaker in December 2013. Tr. 28 (citing Tr. 1297). The 2013 date conflicted with Plaintiff's work history of substantial and gainful employment for several years following the placement of his pacemaker. Tr. 28 (citing 1297).

Regarding Dr. Bochat's opinion's inconsistency with the medical record, the ALJ cited "claimant's generally intact exercise capacity, short episodes of atrial fibrillation and tachycardia, normal gait and coordination, normal respiration, lack of edema, normal alertness and orientation, often normal left upper extremity strength and grip strength, and normal sensation." Tr. 28 (citations omitted). As explained in Section I above, Plaintiff's normal status exams do not contradict Plaintiff's limitations, such as needing breaks or to leave work early due

to symptoms of heart failure, as stated in Dr. Bochat's opinion. Furthermore, Dr. Bochat's opinions are consistent with other medical records, such as Plaintiff's August 18, 2022 appointment with cardiologist Craig Broberg, MD, which documented Plaintiff's progressive symptoms, increased lightheadedness, difficulty walking, and more fatigue. Tr. 453.

Ultimately, the ALJ failed to cite substantial evidence to support her conclusion Plaintiff's limitations as opined by Dr. Bochat were unsupported and inconsistent. Therefore, the ALJ improperly discredited Dr. Bochat's opinion.

### III.   Remedy

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).

In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the

Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell*, 775 F.3d at 1141) (internal quotations omitted).

Here, the first prong is met based on the ALJ's harmful legal errors. As discussed above, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony and for discrediting Dr. Bochat's opinion about Plaintiff's limitations.

As to the second prong, Plaintiff's heart failure is well documented and the Court finds remanding to further develop the record in that regard would serve little useful purpose. The Court notes that the ALJ found Plaintiff's treating provider's opinion unpersuasive. *See Garrison*, 759 F.3d at 1021 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") (citation omitted).

As to the third prong, if the discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. Plaintiff testified he took two to three extra breaks a day from work to manage his symptoms, had a fibrillation or near-fibrillation incident about once or twice a week, and would need to call out sick or miss work due to a medical appointment two or three days a month. Tr. 44, 51-52. Dr. Bochat opined that Plaintiff could stand and walk less than two hours and sit for a maximum of about four hours in an eight-hour workday and would be absent from work more than three days per month. Tr. 1294-95, 1297. The Vocational Expert testified that if a person is off task more than twenty percent of the workday or is absent sixteen hours or more a month, "either of those would be inconsistent with competitive jobs." Tr. 67. Thus, in fully crediting Plaintiff's testimony and Dr. Bochat's medical opinion as true, Plaintiff would be unable to maintain competitive employment and the ALJ would be required to

find Plaintiff disabled on remand. Tr. 67; *see Clester v. Comm'r of Soc. Sec.*, No. 09-cv-765-ST, 2010 WL 3463090, at *8 (D. Or. Aug. 3, 2010) (crediting doctor's opinion that the claimant "had marked limitations in her ability to . . . maintain regular attendance, and be punctual within customary tolerances" combined with VE testimony that "individuals who miss two or more days on a chronic basis are not competitively employable" warranted remanding for an immediate calculation and award of benefits), *adopted*, 2010 WL 3463078 (D. Or. Aug. 31, 2010).

## ORDER

For the reasons discussed above, the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation and payment of benefits.

It is so ORDERED and DATED this 13 day of November, 2025.

MARK D. CLARKE
United States Magistrate Judge